

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

---

*445 Broadway, Room 218*     *Tel.: (518) 431-0247*
*James T. Foley U.S. Courthouse*     *Fax: (518) 431-0249*
*Albany, New York 12207-2924*

January 23, 2026

<u>By E-mail and ECF</u>

The Honorable Marcia H. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:     United States v. Robert Sacco
                  <u>Criminal Docket No. 26-MJ-15</u>

Dear Judge Henry:

       The government respectfully submits this letter in support of its request that the Court enter an order of detention against the defendant, Robert Sacco, who will appear before your Honor on January 24, 2026. For the reasons set forth below, the defendant should be detained because he is a danger to the community and a risk of flight, and no combination of conditions can mitigate these risks.

    I.     <u>Legal Standard</u>

       Under the Bail Reform Act, 18 U.S.C. § 3141 <u>et</u> <u>seq.</u>, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987).

       The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." <u>United States v. Millan</u>, 4 F.3d 1038, 1048 (2d Cir. 1993) (internal quotation marks omitted).

       Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled

Letter to Judge Henry
United States v. Sacco
26-MJ-15
January 23, 2026
Page 2

substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (explaining that the possibility of a "severe sentence" heightens the risk of flight); accord United States v. Cisneros, 328 F.3d 610, 618 (l0th Cir. 2003) (finding that the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination; rather, most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

II.    Argument

The defendant is charged by complaint with attempted sexual exploitation of a child, in violation of Title 18, United States Code, Sections 2251(a) and (e). This charge carries a statutory presumption under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." See 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. § 2251).

Letter to Judge Henry
United States v. Sacco
26-MJ-15
January 23, 2026
Page 3

The defendant should be detained. For the reasons described below, the government has met its burden of establishing the defendant's dangerousness and risk of flight sufficient to require his detention. No condition or combination of conditions will ensure his appearance before the Court and the safety of the community.

A. <u>The Defendant Is a Danger to the Community</u>

The defendant, a 38-year-old Nassau County Police Department Detective, is charged with attempted sexual exploitation of a child. In short, the defendant, a police officer sworn to protect, intended to sexually exploit a 10-year-old girl, as described below and in the complaint. Accordingly, he should be detained as a danger to the community.

In October 2025, the defendant began communicating with an undercover law enforcement officer over an online application ("the App"). For almost four months, the defendant and the UC exchanged messages on the App and through encrypted messaging. During those communications, the defendant expressed his sexual interest in children, including at least one child to whom he had access, discussed meeting the UC and his purported 10-year-old daughter to sexually abuse her, and ejaculated on pictures of the UC's purported 10-year-old daughter.

On January 4, 2026, the defendant told the UC, "I would absolutely love to set something up in person, the proximity will make it tough but I'm willing to try and make it work if we can! And not offended at all, I totally get it. Maybe we can work up to video chatting together one day to start?" That same day, the defendant asked the UC if the UC thought it would be good for the 10-year-old child to watch him masturbate and ejaculate on camera. The UC stated he would never ask for a video or picture of the defendant's penis, but if he thought that would make the minor more comfortable, then he would be open to it. In response, the defendant sent a photo of his erect penis and said he "would be honored to help her learn and grow." He also wanted to hear what the UC's daughter thought of his erect penis picture. The defendant wrote, "Had a thought too, do you think you like for her to watch me cum for her on cam? Maybe watch me stroke and explode all over myself for her?" He went on, "I can't wait to hear what she thinks of it ;) she would look to amazing with it resting on her beautiful face. Any chance I could see a pic of your cock? :)"

From January 5 through January 7, 2026, the defendant asked the UC whether he had shown the image of the defendant's erect penis to the 10-year-old child and proposed that if she "likes what she sees" then they could arrange a video call. On January 7, the defendant volunteered to purchase an outfit for the 10-year-old child to help her be more comfortable about engaging in sex acts. He perused the internet for ideas and sent links to girls' underwear and bras to the UC. The defendant sent the UC the information for a prepaid debit card to pay for the items.

Letter to Judge Henry
United States v. Sacco
26-MJ-15
January 23, 2026
Page 4

On January 8, the defendant suggested that he and the UC video chat while masturbating so they could discuss the 10-year-old child. The defendant also asked the UC, "I don't think we discussed, anything that's off limits or things you don't want?" The UC responded, "I don't think theres any hard limits. Maybe just no marks where someone can see? Like no bruises or anything. Not really into scat stuff either but not opposed to much more. Maybe some water sport stuff if we wanna get really taboo. Only what youd be cool with seeing too." In response, the defendant told the UC, "I agree on the marks. And the scat. I do love watersports. I think seeing that would definitely get me turned on." The defendant continued, "I'd love to see anything pee related. U peeing on her, her peeing on you or in general, in person I should love to have her pee in my mouth. Do you think she would be comfortable tasting it?" That same day, at the defendant's request, the UC emailed photos of his purported daughter to the defendant so that he could masturbate to them an ejaculate on the photos. The defendant then sent back the photos with what appeared to be semen on them.

On January 10, the UC informed the defendant that his daughter has hearing and speech issues so "when she moans it's like really loud and long and sounds sorta fucked up" and asked if the defendant "would be cool with it." The defendant said he had no problems and then asked the UC to "record it so I can hear it beforehand? So I know what it sounds like?" On January 15, the UC emailed the defendant an approximately 14-second recording of another undercover officer pretending to be the UC's daughter. In that recording, the female undercover moaned and said, in substance, "feels so good daddy." The defendant responded, "Holy fuck.... I am rock hard after listening to that 🔥 🔥 . . . As soon as I woke up I listened to it. I really can't wait to see her make those sounds."

On January 12, another FBI TFO acting in an undercover capacity ("UC-2") had a video call on an encrypted application with the defendant where the two of them masturbated on screen. UC-2 was using a prosthetic penis. During the call the defendant said, in substance, that UC-2's penis was much bigger but that his would fit in the UC's daughter's mouth perfect. He also said that he wanted the UC's daughter to urinate in a fancy glass and that he would drink her urine. After the video call, the defendant messaged that it was "crazy hot" and then asked, "Do you think [your daughter] would like seeing my cock? . . . Can't wait to see her ;) lemme know what days are good for you."

After the video call, the defendant told the UC that he got the "fist toy" inside of his anus and that the UC's daughter "would be able to get her whole arm in there." He again proposed a video call with the minor: "Mmmm how soon would you like to have the video chat with her? I can't wait 🥵" He also asked, "Have u told her about our plan to video chat soon? :)"

While discussing the video call, the defendant expressed his concern that he would ejaculate too quickly while watching the UC sexually assault his daughter. The chat involving the UC, his daughter, and SACCO was scheduled for the week of January 26, but SACCO informed

Letter to Judge Henry
United States v. Sacco
26-MJ-15
January 23, 2026
Page 5

the UC that he would be traveling to Disneyworld in Florida on Sunday (January 25) so the video chat was moved up to Friday, January 23 around 10:00 a.m.

During some of their chats, the defendant said he was concerned about being caught, including recently stating, "Do you ever use a VPN when chatting about such naughty things? Every worry about privacy? Once in a while I get nervous seeing videos about people getting caught"  As January 23 approached, the defendant again expressed concern about getting arrested, stating "Idk if it's just me but I have been seeing a lot of news articles about guys getting caught with inappropriate stuff on their phone and I've been like kinda worried 😅" The defendant discussed using encrypted applications, VPN, and never saving anything to his phone in an effort to avoid detection.

On January 23, at approximately 10:00 a.m., UC-2 and the defendant engaged in a video chat after the defendant had further discussed what sexually explicit acts he wanted the UC to perform on his daughter during the chat.  The defendant did not show his face, but UC-2 was able to recognize the same voice and penis from the January 12 video chat.  The defendant was masturbating while discussing, <u>inter alia</u>, having the 10-year-old child perform oral sex on the UC.

UC-2 then attempted to get the purported child from a nearby bedroom, but the child refused to come out.  After the video chat, the defendant continued to exchange messages with UC.  During the chats, the defendant asked, "Do you wanna postpone?  I'm OK with another day.  Just lemme know :)  I'll go about my day if you guys wanna wait."  After the UC agreed with postponing, the defendant asked, "Any pics you wanna tease me with in the meantime: :)" followed by "If u can send here where it's safe I'd love to see it before I sign out :) Or maybe a short video? 😋"

The UC responded that he had sent pictures of his daughter to the defendant before and was getting nervous that maybe the defendant was setting him up.  The defendant responded, "Dude no worries, no I get it. Maybe I can tribute again for you? Would u wanna do that now? We can video and u can watch me blow a quick load," "She can just watch off camera," "Or just u and me."  When the defendant said maybe he could "tribute" he meant ejaculate on a photograph of the UC's daughter as he did earlier in their conversations.  When the UC told the defendant "We don't have to do that now sorry for being paranoid," the defendant responded, "I was hoping to cut, I'd be happy to cut for u real quick" and clarified "cum*."  The defendant stated, "I'm pretty ready to haha I can just blow a load quick."  Then the defendant asked the UC, "U wanna send me another pic? Or use one of the ones I did already?"  The UC responded by sending the defendant another age regressed picture purporting to depict the UC's daughter.  The defendant asked, "Shall I print it and cum on it."  The defendant proceeded to videotape himself masturbating and ejaculating on the picture of the purported child and then sent that video to the UC.

Letter to Judge Henry
United States v. Sacco
26-MJ-15
January 23, 2026
Page 6

        The defendant repeatedly suggested setting up a video call with who he believed to be a father and his 10-year-old daughter so that he could watch the father sexually assault the child. The defendant's conduct demonstrates that this was not fantasy or roleplaying. He confirmed that he wanted to see that abuse, logged into a video call in which he expected to see it, and masturbated while waiting for the 10-year-old to join her purported father in the call. When she didn't, the defendant suggested they try again another time and instead ejaculated on what he believed to be a photograph of the 10-year-old girl.

    B. <u>Risk of Flight</u>

        Additionally, the defendant poses a significant risk of flight. Sexual exploitation of a child carries a statutory mandatory minimum of fifteen years' imprisonment and a statutory maximum of 30 years. 18 U.S.C. § 2251(e). As a result of the nature of the offense charged in the complaint, the defendant faces significant penalties prescribed by law, giving him substantial incentive to flee. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." <u>United States v. Edwards</u>, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021).

        The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. <u>See</u> <u>United States v. Jackson</u>, 823 F.2d 4, 7 (2d Cir. 1987); <u>United States v. Cisneros</u>, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); <u>United States v. Townsend</u>, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

        The penalties the defendant faces are serious. Here, the mandatory minimum sentence for the crimes charged creates a strong incentive for the defendant to flee. Further, it is hard to imagine a defendant more capable of avoiding law enforcement than a member of law enforcement. As a detective, the defendant is more familiar with investigative means than most defendants. Moreover, the penalties the defendant faces are serious. Accordingly, the possibility of a significant sentence presents a strong risk of flight.

III.    <u>Conclusion</u>

        The defendant poses both a danger to the community and a risk of flight such that no combination of conditions will ensure the safety of the community or his appearance before the Court. For the foregoing reasons, the United States respectfully requests the Court issue an order of detention against the defendant.

Letter to Judge Henry
United States v. Sacco
26-MJ-15
January 23, 2026
Page 7

                Respectfully submitted,

                /s/
                TODD BLANCHE
                Deputy Attorney General

                JOHN A. SARCONE III
                Acting United States Attorney

By:    /s/ Katherine Kopita
        Katherine Kopita
        Assistant United States Attorney
        Bar Roll No. 517944

cc:    Defense Counsel (by hand and ECF)
       Clerk of Court (by ECF)